**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| AMY ROBERTS, individually and on behalf of all others similarly situated, | Civil Action No.: 2:22-cv-02862-MHW-CMV |
| Plaintiff, | JUDGE MICHAEL H. WATSON |
| v. | MAGISTRATE JUDGE CHELSEY M. VASCURA |
| THE EPOCH TIMES ASSOCIATION, INC. | |
| Defendant. | |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT THE EPOCH TIMES ASSOCIATION, INC.

4890-6359-4559.1

**MEMORANDUM IN SUPPORT**
**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................1

LEGAL ARGUMENT.....................................................................................................1

I.     Plaintiff Does Not Adequately Allege Epoch's Supposed Disclosure To Facebook Included Her Personally Identifiable Information..................................1

     A.    Plaintiff's Allegations about Her Information do Not Equate to PII Under the VPPA .......................................................................................1

     B.    Facebook's C_User Cookie Would not Permit an Ordinary Person to Identify a Specific Individual's Video Watching Behavior.....................5

II.    Plaintiff Does Not Plausibly Allege Epoch Disclosed Her PII...............................8

III.   Plaintiff Does Not Plausibly Allege Epoch "Knowingly" Disclosed Her PII.......................................................................................................................11

IV.   Plaintiff's Allegations Lack The Specificity Necessary To Determine If The VPPA Applies To The "Video Media" She Consumed ...............................12

CONCLUSION...............................................................................................................14

i

4890-6359-4559.1

## MEMORANDUM IN SUPPORT
## TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................14

*Austin-Spearman v. AMC Network Entm't LLC*,
98 F. Supp. 3d 662 (S.D.N.Y.)........................................................................................9

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
No. 17-CV-04570 (LAK) (KHP), 2017 LEXIS 129038 (S.D.N.Y. Aug. 11,
2017) ...............................................................................................................................12

*Czarnionka v. Epoch Times Assn.*,
22-civ-6348-AKH, 2022 U.S. Dist. LEXIS 209067 (S.D.N.Y. Nov. 17, 2022) .................8, 14

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........................................................................................5, 6

*Gardner v. Quicken Loans, Inc.*,
567 F. App'x 362 (6th Cir. 2014) ...................................................................................10

*Gordon v. Chipotle Mex. Grill, Inc.*,
344 F. Supp. 3d 1231 (D. Colo. 2018)..............................................................................2

*Greenberg v. Life Ins. Co. of Va.*,
177 F.3d 507 (6th Cir. 1999) .........................................................................................10

*In re Hulu Priv. Litig.*,
No. C 11-03764 LB, 2014 U.S. Dist. LEXIS 83661 (N.D. Cal. June 17, 2014) .......................9

*In re Hulu Privacy Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) .....................................................................8, 11, 12

*In re Hulu Privacy Litig.*,
No. C 11-03764 LB, 2014 U.S. Dist. LEXIS 59479 (N.D. Cal. Apr. 28, 2014) .......................4

*Lebakken v. WEBMD, LLC*,
No. 1:22-CV-644-TWT, 2022 U.S. Dist. LEXIS 201010 (N.D. Ga Nov. 4,
2022) .................................................................................................................................5

*Louth v. NFL Enter. LLC*,
No. 1:21-cv-00405, 2022 U.S. Dist. LEXIS 163706 (D.R.I. Sep. 12, 2022) .............12, 13, 14

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) .........................................................................................6

ii

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016)........................................................................................5

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015).................................................................2, 4, 8

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ...................9, 10

*Stark v. Patreon, Inc.*,
No. 3:22-cv-0313-JCS, 2022 U.S. Dist. LEXIS 187602 (N.D. Cal. Oct. 13,
2022) ...............................................................................................................6, 13, 14

*Wilson v. Triller, Inc.*,
No. 21-cv-11228 (JSR), 2022 U.S. Dist. LEXIS 71085 (S.D.N.Y. Apr. 18,
2022) ................................................................................................................1, 2, 3

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016).......................................................................................6

**Statutes**

18 U.S.C. § 2710..........................................................................................1, 11, 12, 13

**Court Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................1

iii

The Epoch Times Association, Inc. ("Epoch"), submits this reply in support of its motion to dismiss the Class Action Complaint ("Complaint") of Amy Roberts ("Plaintiff") for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's brief in opposition (ECF No. 11, "Opposition") does not overcome the pleading deficiencies of the Complaint, which alleges a single count – a violation of the Video Privacy Protection Act ("VPPA"). Epoch's opening brief demonstrated the Complaint does ***not plausibly allege***: (1) disclosure of Plaintiff's personally identifiable information ("PII"), as that term is applied under the VPPA; (2) that Epoch ***disclosed*** PII; (3) that Epoch ***knowingly*** disclosed PII; or (4) the VPPA applies to the "video media" Plaintiff consumed. Because knowing disclosure of PII in conjunction with prerecorded video information is necessary to carry a VPPA claim, and because the Complaint fails to plead as much, on multiple levels, the Complaint should be dismissed.

## LEGAL ARGUMENT

I.  **Plaintiff Does Not Adequately Allege Epoch's Supposed Disclosure To Facebook Included Her Personally Identifiable Information**

A.  Plaintiff's Allegations about Her Information do Not Equate to PII Under the VPPA

Plaintiff spends pages arguing how a Facebook ID is PII under the VPPA. *See* Opp., ECF No. 11 at PageID 72-80. The argument misses the mark. A Facebook ID does not rise to the level of PII under the VPPA unless the Facebook profile to which it is attached contains information that allows identification of the person tied to the profile. *See Wilson v. Triller, Inc.*, No. 21-cv-11228 (JSR), 2022 U.S. Dist. LEXIS 71085, at *18 (S.D.N.Y. Apr. 18, 2022). The Complaint does not permit an inference that Plaintiff's Facebook profile includes data sufficiently identifying her, and

this pleading failure is what Epoch is attacking.  Plaintiff has only alleged information was transmitted using a Facebook c_user cookie in which a Facebook ID is embedded.  That is not PII.

Contrary to Plaintiff's assertions, Epoch does not argue that PII is limited to information, which read "in perfect isolation, infallibly identifies one person to the exclusion of all others." Opp., ECF No. 11 at PageID 73.  Rather, Epoch encourages the Court to adopt the definition of PII adopted by "'the majority of courts to address the issue….'" *Wilson*, 2022 U.S. Dist. LEXIS 71085, at *13 (quoting *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 180 (S.D.N.Y. 2015)).  Under the majority definition of PII, "the information disclosed by a video tape service provider ***must***, at the very least, identify a ***particular*** person—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179 (emphasis in original).  Accordingly, "[i]f nearly any piece of information can, with enough effort on behalf of the recipient, be combined with other information so as to identify a person, ***then the scope of PII would be limitless***." *Id.* at 181 (emphasis added).

Plaintiff claims to meet the pleading requirement for PII based on her allegation in Paragraph 41 of the Complaint:  "As a result of Defendant's data compiling and sharing practices, Defendant has knowingly disclosed to Facebook for its own personal profit the Personal Viewing Information of Defendant's digital subscribers, together with additional sensitive personal information." Compl., ECF No. 1 at PageID 12 ¶ 41; Opp., ECF No. 11 at PageID 79.  According to Plaintiff, this single allegation, referring generally to Epoch's digital subscribers, is sufficient to demonstrate Epoch shared ***her*** PII.  Opp., ECF No. 11 at PageID 79.  Plaintiff states that Epoch cites no authority requiring more.  *Id*. at PageID 78-79.  Plaintiff is wrong.

As an initial matter, allegations that "contain no detail and are not plaintiff-specific" are insufficient to support a claim.  *See Gordon v. Chipotle Mex. Grill, Inc.,* 344 F. Supp. 3d 1231,

2

1242-43 (D. Colo. 2018) (finding no error in considering only "unique allegations" about plaintiff's supposed injury as opposed to allegations of injury for all plaintiffs). Complaint paragraph 41 does not even mention Plaintiff. The paragraph does not support Plaintiff's PII contention.

Other legal authority also undercuts Plaintiff's position. In *Wilson*, a decision Epoch cited in its opening brief but disregarded by Plaintiff, the court evaluated whether information about the plaintiff, shared with Facebook by defendant Triller, a social media application, was PII under the VPPA. *Wilson*, 2022 U.S. Dist. LEXIS 71085, at *17. The information allegedly disclosed by Triller included the plaintiff's unique user identification number assigned by Triller ("UID"), her country, time zone, the videos she watched or otherwise engaged with, other people's profiles she viewed, as well as certain other information about the device she used. *Id.* According to the complaint, Facebook could pair "the UID with information from a user's Triller profile page, which may or may not contain various personal information about the user such as any information included in the 'About Me' page or a URL associated with a photograph of the user." *Id*.

The *Wilson* court stated that although "the complaint alleges what sort of information could be included on a user's profile and then ultimately disclosed to the third parties, it contains no allegation as to what information was actually included on [plaintiff's] profile nor how that information could be used by a third party to identify [plaintiff]." *Id*. at *17-18. The court, therefore, held the information disclosed to Facebook did not constitute PII. *Id*. at *18.

Here, Epoch asks the Court to scrutinize the PII Epoch allegedly transmitted to Facebook: a series of numbers after Facebook's c_user cookie that is embedded among hundreds of other numbers, letters, and symbols in Facebook's GET request. *See* Compl., ECF No. 1 at PageID 12 ¶ 40. Like in *Wilson*, to identify Plaintiff, Facebook would have to locate the ID number in the c_user cookie and pair it with information on Plaintiff's Facebook profile. ***Plaintiff does not allege her***

3

***Facebook profile contained information that identified her***.  Indeed, instead of using Plaintiff's Facebook profile or ID to demonstrate how the c_user cookie is transmitted, the Complaint includes a screenshot of a GET request placed by Facebook.com on an anonymous user's web-browser related to a video on thehill.com website (not the Epoch website).  Compl., ECF No. 1 at PageID 12 ¶ 40.  Plaintiff does not adequately allege her PII was disclosed.  That information simply is not found in the Complaint.

Plaintiff's reliance on a statement in *Robinson*, in which the court distinguished *In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2014 U.S. Dist. LEXIS 59479, at *45-46 (N.D. Cal. Apr. 28, 2014) by stating "[n]or is the information disclosed by Disney equivalent to a Facebook ID," is misplaced for two reasons.  *Robinson*, 152 F. Supp. 3d at 184; *see* Opp., ECF No. 11 at PageID 77, 78.  First, the *Hulu* court did not hold a Facebook ID, without more, is enough to identify a consumer under the VPPA.  *In re Hulu Privacy Litig.*, at *45-46 ("There is a material issue of fact that the information transmitted to Facebook was sufficient to identify individual consumers.").  Second, the *Hulu* court denied the defendant's motion for summary judgment after the plaintiffs submitted expert testimony to establish the specific Facebook IDs at issue indirectly identified Facebook users by name.  *Id*.  The Complaint's averments proffer no such details about Plaintiff.

Similarly, Plaintiff's citation to *Ambrose v. Boston Globe Media Partners LLC* is unhelpful to Plaintiff's position.  There, the plaintiff alleged the Boston Globe "using Facebook's Tracking Pixel and Advanced Matching tools—disclosed [plaintiff's] Facebook ID, email address, first name, last name, and mailing address to Facebook, as well as information about the videos [plaintiff] has accessed on the Globe website."  No. 21-10810-RGS2022, U.S. Dist. LEXIS 168403, at *3 (D. Mass. Sep. 19, 2022).  Again here, the Complaint contains no such averment – there is nothing alleged, for instance, about Plaintiff's email or mailing address.

4

On November 4, 2022, Plaintiffs filed a Notice of Supplemental Authority citing *Lebakken v. WEBMD, LLC*, No. 1:22-CV-644-TWT, 2022 U.S. Dist. LEXIS 201010, at \*11-12 (N.D. Ga Nov. 4, 2022).  Opp., ECF No. 12.  In *Lebakken*, the court held "Lebakken adequately alleged that WebMD disclosed her Facebook ID ***and email address*** in connection with her video viewing information to Facebook and that the disclosure of such information constituted a disclosure of PII, supporting a plausible claim under the VPPA."  *Id*. (emphasis added).  It is unclear if the *Lebakken* court would have found the disclosure accusation sufficient if the only information disclosed by WebMD along with the video information was a Facebook ID embedded in a c_user cookie, as is the case here.

To put Defendant's position another way, complaints contending a VPPA violation should be dismissed when a plaintiff (i) relies solely on a unique social-media user identification number (e.g., a Facebook ID) to contend PII is at issue, but (ii) fails to adequately allege how the number is affiliated with plaintiff, an actual person.

B. <u>Facebook's C_User Cookie Would not Permit an Ordinary Person to Identify a Specific Individual's Video Watching Behavior</u>

Plaintiff acknowledges that under the narrow definition adopted by most courts, PII is limited to "the kind of information that would ***readily permit an ordinary person*** to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 290 (3d Cir. 2016) (emphasis added); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (noting the "ordinary person" interpretation of PII "fits most neatly with the regime that the VPPA's enacting Congress likely had in mind"); Opp., ECF No. 11 at PageID 73-75, 78.  The vast majority of courts considering the issue view "disclosure from the perspective of the disclosing party.  [They look] to what information a video service provider discloses, not to what the recipient of that information decides to do with it." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017).  As a result, PII "must have the same meaning without regard to its recipient's capabilities

5

because holding otherwise would make the lawfulness of a disclosure "'depend on circumstances outside of [a video service provider's] control.'" *Id.* (quoting *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015)).[1]

Plaintiff mischaracterizes Epoch's argument by stating Epoch "speculates that '[a]n ordinary person would not be able to do anything with a Facebook ID." Opp., ECF No. 11 at PageID 79. What Epoch actually argues is *Facebook's c_user cookie* that is embedded among hundreds of other numbers, letters, and symbols in Facebook's GET request would not have meaning to an ordinary person. *See* Compl., ECF No. 1 at PageID 12 ¶ 40. The appropriate test here is whether an "ordinary person" could use the c_user cookie allegedly disclosed by Epoch to "identify individual users, not whether Facebook could do so or whether [Epoch] knew that Facebook could do so." *Stark v. Patreon, Inc.*, No. 3:22-cv-0313-JCS, 2022 U.S. Dist. LEXIS 187602, at *24 (N.D. Cal. Oct. 13, 2022).

For illustration, the Complaint includes a screenshot of a GET request placed by Facebook.com on an anonymous user's web-browser related to a video on thehill.com website. Epoch included the screenshot in its opening brief and does so again here. Generally, Epoch's counsel would advise against submitting the same information twice, but the screenshot powerfully illustrates what an average individual would see if the material was emailed to them or handed to them on a piece of paper. To the ordinary person, the information is not comparable, by a long shot, to the list of videos rented by the Bork family in the paradigmatic VPPA case.

---

[1] By contrast, the First Circuit has adopted a broad definition of PII, as it makes PII under the VPPA recipient-dependent. *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). In *Yershov*, the court concluded the defendant disclosed PII when it shared with Adobe information about videos the plaintiff watched and certain identifiers connected to plaintiff's mobile device because Adobe could use the vast information and resources at Adobe's disposal to identify the plaintiff. *Id.* at 485-86. Epoch is not aware of a case in this district adopting *Yershov*.

6

```
METHOD: GET  +

URL

+ https://www.facebook.com/tr/?id=1753508728076333&ev=K
WVID&dl=https%3A%2F%2Fthehill.com%2Fhilltv%2Frising%2F56
8763-journalist-zaid-jilani-warns-media-against-covid-19
-grave-dancing&rt=https%3A%2F%2Fthehill.com%2Fhilltv&if=
false&ts=1629632773255&cd[vEvent]=videoProgress&cd[posit
ion]=15.18845&cd[positionDesc]=15sec&sw=1536&sh=864&v=2.
9.44&r=stable&ec=10&o=30&fbp=fb.1.1629632720602.17539321
13&it=1629632723824&coo=false&dpo=LDU&dpoco=0&dpost=0&tm
=2&rqm=GET

HEADERS

+ accept:              image/avif,image/webp,image/apng,imag
                       e/svg+xml,image/*,*/*;q=0.8
+ accept-             gzip, deflate, br
  encoding:
+ accept-             en-US,en;q=0.9
  language:
+ connection:         keep-alive
+ cookie:             sb=QSYiYalyDwjYI6rQNkC3a1mk;
                      datr=QSYiYVC85DiamULjOSfxaqg8;
                      dpr=1.25; c_user=117          ;
                      spin=r.1004289719_b.trunk_t.162962804
                      4_s.1_v.2_;
                      xs=48%3A3FkHDBcXoLJ1Tg%3A2%3A16296280
                      21%3A-
                      1%3A15160%3A%3AAcXXzVWgrYBt_uvziFGqMr
                      tM8z_HOM-JB6wRAONlGA;
                      fr=1So81N3XiySO0qSy8.AWWaqOIEqa49fm2S
                      eSkx3JJ_Wx4.BhIjSO.QD.GEi.0.0.BhIjSO.
                      ;
                      presence=EDvF3EtimeF1629632281EuserFA
                      21175294866A2EstateFDutF0CEchF_7bCC
+ host:               www.facebook.com
```

HTTP single communication session sent from the device to Facebook, reveals the video name, URL and the
viewer's FID (c_user field)

Compl., ECF No. 1 at PageID 11-12 ¶ 40 (emphasis added).

From this screenshot, would an average viewer be able to discern what is displayed? Could

the Court? Is there a person readily identified? Is a connection between the video data somewhere

7

therein and an actual person apparent?  Consider *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1096-97 (N.D. Cal. 2015) (noting need under VPPA for connectivity between video and person).

Plaintiff argues, "*anyone*, even someone with extremely limited technical proficiency, can enter "facebook.com/" into a web browser followed by Plaintiff's Facebook ID and be taken directly to her personal Facebook page." Opp., ECF No. 11 at PageID 74.  But this logic presupposes an understanding of a Facebook ID, including how to locate it.  Trying to overcome this problem, the Opposition suggests an ordinary person undertake research:  access a device that has internet capability, open a web browser / search engine, run a search for the term "c_user" (though how somebody would know to investigate that term is never explained), and then analyze the results to decipher what the "c_user" is and does.  *Id*.  A disclosure requiring research to permit an ordinary person to identify its meaning is, by definition, not PII.  *See Robinson,* 152 F. Supp. 3d at 182 ("most natural reading of PII [is] ***not*** information disclosed … plus other pieces of information collected elsewhere by non-defendant third parties.") (emphasis added).  For this additional reason, Facebook's c_user cookie does not meet the statutory definition of PII.[2]

## II.    Plaintiff Does Not Plausibly Allege Epoch Disclosed Her PII

Even if a c_user cookie were PII, Epoch is not the one disclosing it.  The Opposition alleges the Pixel is "developed by Facebook" and "remits users' PII to Facebook."  Opp., ECF No. 11 at PageID 80.  Plaintiff does not dispute that the information the c_user cookie collects is from a user's

---

[2] After the filing of the Opposition, in a separate VPPA action against Epoch based on Facebook Pixel,  the S.D.N.Y. denied Epoch's motion to dismiss. *Czarnionka v. Epoch Times Assn.*, 22-civ-6348-AKH, 2022 U.S. Dist. LEXIS 209067 (S.D.N.Y. Nov. 17, 2022).  Despite adopting the majority view on  PII, which requires "the disclosure itself, without any additional information, to identify a particular person," the court found the plaintiff had adequately alleged PII. *Id*. at *5-6, 8. In so deciding, the court ignored the "ordinary person" standard and focused exclusively on whether a Facebook ID is PII under the VPPA. *Id* at * 6-8.  But there, like here, Epoch is not arguing a Facebook ID cannot be PII, but that the disclosure alleged and at issue – a c_user cookie with ID buried therein – is  not PII, particularly when the ID's presence is ambiguous to the ordinary person.

web browser—it is not from a website.  *See* Opp., ECF No. 11 at PageID 80-82.  Instead, Plaintiff cites cases to contend, "under the VPPA and in other contexts, any act that gives others access to what was previously inaccessible may constitute a disclosure."  *Id*. at PageID 81.  Plaintiff also recites *Merriam-Webster*'s definition of "disclose" as to "make known" or "expose to view."  *Id*. at PageID 81-82.  Yet, Plaintiff's descriptions of what constitutes a disclosure merely evidence the deficiency of Plaintiff's pleading.

Plaintiffs' own allegations about the c_user cookie make clear Epoch is not giving information to Facebook.  Plaintiff does not dispute the screenshot of Facebook's GET request in the Complaint states the request is hosted by www.facebook.com.  *See* Compl., ECF No. 1 at PageID 11-12 ¶ 40.  Facebook, the host, places the cookie on its users' browsers and receives information from them.  *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 948 (N.D. Cal. 2017) ("Facebook puts cookies on visitors' computers.  It uses these cookies to store information about each visitor—for instance, the 'c _user' cookie is a unique identifier . . . ."), *aff'd*, 745 F. App'x 8 (9th Cir. 2018); *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 U.S. Dist. LEXIS 83661, at *8 (N.D. Cal. June 17, 2014) ("Facebook sets the c _user cookie"); *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662 at 664 (S.D.N.Y.) ("[T]hrough its 'c _user' cookie, Facebook's code allegedly forces a user's web browser to look for the user's Facebook ID.").

Plaintiff argues that "no information about Epoch's subscribers' video requesting and watching habits would be transmitted to Facebook at all if Epoch had not installed and continued to maintain the Pixel on its website."  Opp., ECF No. 11 at PageID 80.  But cases analyzing similar claims find communications involving the c_user cookie are between a user and the party who places the cookie.  In *Smith*, the federal court evaluated whether healthcare defendants who embedded code on their websites provided by Facebook, including GET requests related to the c_user cookie, were

9

liable for negligently disclosing plaintiffs' confidential information. *Smith*, 262 F. Supp. 3d at 948.

The court found, as it should here, the defendants did not disclose information (*id.* at 951):

> the comprehensiveness of Facebook's tracking does not establish that the Healthcare Defendants "send" information to Facebook, as Plaintiffs suggest. More accurately, [the Healthcare Defendants] embed code that creates a new connection between a visitor's browser and a Facebook server. The website's decision to embed the code allows that connection to occur, but the connection happens independently. Besides triggering a second GET request in the user's browser, the Healthcare Defendants play no part in the exchange of data between Facebook and Plaintiffs.

Without a merits argument to dispute Epoch's related Facebook Cookie policy recitation, the Opposition tries an "improper" citation argument, claiming Epoch's reference to the policy to be improper. Opp., ECF No. 11 at PageID 80. Plaintiff cites no case supporting this position and paradoxically attempts to argue facts from Meta's "Business Help Center" that she did not plead. *Id*. at PageID 82. Facebook's Cookie Policy confirms the c_user cookie is placed by Facebook and that the cookie sends information from a Facebook user's web browser to Facebook.[3] Plaintiff repeatedly references the c_user cookie in her Complaint and whether Epoch disclosed the c_user to Facebook is central to Plaintiff's claim. Epoch's citation to the policy is proper. *See Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364-365 (6th Cir. 2014) (quoting *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

Because Epoch did not disclose the c_user cookie to Facebook, Plaintiff has not pled an indispensable element of her VPPA claim. The claim should be dismissed.

---

[3] The Facebook Cookie Policy also indicates Plaintiff consented to Facebook placing a c_user cookie on her web browser. *See* Facebook, *Cookies Policy,* https://www.facebook.com/policy/cookies/ (last revised Nov. 23, 2022). Plaintiff compares Epoch to a "motel owner who invites others into its motel rooms to install remotely operated cameras." Opp., ECF No. 11 at PageID 80. A better analogy, however, would be if Judge Bork had hired a documentarian to follow him and then sued Blockbuster when the documentarian filmed the videos Judge Bork rented at Blockbuster.

4890-6359-4559.1

**III.     Plaintiff Does Not Plausibly Allege Epoch "Knowingly" Disclosed Her PII**

Plaintiff's claim also fails because she fails to plead a "knowing" disclosure of PII, as required for a VPPA violation. *See* 18 U.S.C. § 2710(b)(1). Plaintiff argues Epoch "ignores" three paragraphs in the Complaint that demonstrate Epoch "knowingly" disclosed Plaintiff's protected information to Facebook. Opp., ECF No. 11 at PageID 82-83. The Complaint asserts Epoch "installed the Facebook tracking pixel…because [Epoch] benefits financially from the advertising and information services that stem from use of the pixel." Compl., ECF No. 1 at PageID 8 ¶ 32. The Complaint also states Epoch "knew that the Facebook pixel disclosed Personal Viewing Information to Facebook. This was evidenced from, among other things, the functionality of the pixel, including that it enabled Epoch Times' website and app to show targeted advertising to its digital subscribers and account holders based on the products those digital subscribers and account holders had previously viewed on the website or app, including Video Media purchase, for which [Epoch] received financial remuneration." Compl., ECF No. 1 at PageID 10 ¶ 35; *see also id*. at PageID 18 ¶ 66.

Stated simply Plaintiff argues (a) Epoch installed code provided by Facebook on its website and (b) Epoch's knowledge that the code transmitted PII to Facebook can be inferred because the Pixel allowed Epoch to receive the alleged benefit of showing its subscribers targeted advertising. In so arguing, Plaintiff ignores that Epoch's "knowing" disclosure of PII is at issue. Plaintiff's assertion that Epoch knowingly installed website code or knew Pixel's functionality is irrelevant.

Focusing on the relevant inquiry, Epoch's mere decision to install code provided by Facebook on its website does not amount to a "knowing" disclosure of PII under the VPPA. Indeed, *In re Hulu Priv. Litig.*, says the opposite: "the term 'knowingly' connotes actual knowledge. It is not enough . . . that a disclosure be merely 'voluntary' in the minimal sense of the defendant's being

11

'aware of what he or she is doing . . .." rather, "'knowingly' means consciousness of transmitting the private information. It does not merely mean transmitting the code." 86 F. Supp. 3d at 1095.

The Complaint's averment that Epoch received an alleged benefit through Facebook Pixel also does not adequately meet Plaintiff's "knowing disclosure" pleading burden. Plaintiff must plead Epoch knew the information Facebook received made Facebook aware that a particular person had watched a particular video. *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 LEXIS 129038, at *27 (S.D.N.Y. Aug. 11, 2017), *report and recommendation adopted*, No. 17-CV-4570 (LAK), 2017 LEXIS 137658 (S.D.N.Y. Aug. 28, 2017). Where as here, a defendant "did not think it was conveying PII, then there could be no knowledge of the conveyance." *Id*. In this case, Plaintiff has not alleged Epoch even knew the c_user cookie included a Facebook ID much less that Epoch considered the c_user cookie and its contents to be PII.

## IV. Plaintiff's Allegations Lack The Specificity Necessary To Determine If The VPPA Applies To The "Video Media" She Consumed

The Complaint alleges Plaintiff watched "video media" through the Epoch website and App. There is no other detail about the "video media" viewed. Opp., ECF No. 11 at PageID 85. Under the plain language of the VPPA, Epoch cannot be a "video tape service provider" with respect to "live" content. *See Louth v. NFL Enter. LLC*, No. 1:21-00405, 2022 U.S. Dist. LEXIS 163706, at *11 (D.R.I. Sep. 12, 2022). The VPPA defines a "video tape service provider" as, "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ." 18 U.S.C. § 2710(a)(4) (emphasis added). "The adjective 'prerecorded' modifies both 'video cassette tapes' and 'similar audio visual materials.'" *Louth* at *12 (emphasis in original). After making these determinations and applying the same, the *Louth* court analyzed whether the VPPA applied to a plaintiff's claims premised on the disclosure of PII when plaintiff watched live game content on the NFL App. *Id*. at

12

*11. The court held the VPPA applied to only prerecorded content and dismissed the plaintiff's VPPA claim to the extent it relied on consumption of live content.  *Id*. at *12.

Referring to this distinction (i.e., prerecorded content versus live content), the Northern District of California recently analyzed a VPPA claim against Patreon, Inc. based on Patreon's use of the Facebook Pixel.  *Stark*, 2022 U.S. Dist. LEXIS 187602, at *17-19.  The *Stark* court stated, "this Court is aware of no authority to the contrary, and finds [the *Louth*] analysis persuasive.  It is also notable that while broadcast, cable, and satellite television were all well established at the time of the VPPA's passage, there is nothing in the statute's language suggesting that providers of such live broadcasts fall within its scope."  *Id*. at *19.  The court noted the plaintiffs' "complaint includes numerous references to 'videos' and 'video content,' but does not specify whether they were broadcast live or prerecorded and available on demand.  Nothing in the complaint suggests an inference one way or the other on that question."  *Id*.  Thus, the court found the plaintiffs had not "sufficiently alleged that Patreon provided 'similar audio visual materials,' and their VPPA claim [was] DISMISSED."  *Id*. (emphasis in original).

Plaintiff argues *Louth* and *Stark* provide no basis for the dismissal of her claim because nowhere in her Complaint did she allege "she watched only or indeed any live content on Epoch's website…."  Opp., ECF No. 11 at PageID 85.  Plaintiff, however, fails to mention that she also ***did not allege*** she viewed any prerecorded content on Epoch's website.  Plaintiff, in fact, provides no details regarding the "video media" watched.  Instead, Plaintiff asks the Court to infer that because Epoch is "engaged in the business of delivering audiovisual materials… similar to prerecorded video cassette tapes" that the "video media" she consumed on Epoch's website and App was prerecorded.  Opp., ECF No. 11 at PageID 85.  This argument, however, is one the court considered and rejected in *Stark*.  *Stark*, 2022 U.S. Dist. LEXIS 187602, at *3 (Dismissing VPPA claim despite the fact

13

plaintiff alleged the defendant "engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes….").  Just because Epoch provides prerecorded content does not mean Plaintiff watched it.  *See Louth*, 2022 U.S. Dist. LEXIS 163706, at *2 (Dismissing VPPA claim as to live content despite the fact plaintiff alleged the NFL App disseminates "live local and primetime games … and replays of every game.").  Like in *Louth* and *Stark*, Plaintiff fails to provide the necessary supporting facts regarding the "video media" she allegedly consumed to determine if the VPPA applies to her claim.[4]

## CONCLUSION

Because Plaintiff failed to adequately allege one or more elements of her VPPA claim, Epoch requests the Court dismiss the Complaint in its entirety.

Respectfully submitted this 30th day of November, 2022.

By:  ___*/s/ Brad J. Barmen*___
  Brad J. Barmen (0076515)
  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
  1375 East 9th Street, Suite 2250
  Cleveland, Ohio 44114
  Tel.: 216-586-8810
  Fax: 216-344-9421
  brad.barmen@lewisbrisbois.com

  *Counsel for Defendant*
  *The Epoch Times Association, Inc.*

---

[4] In *Czarnionka,* the court held *Louth* and *Stark* did not mandate dismissal of the asserted VPPA claim.  2022 U.S. Dist. LEXIS 209067, at *11-12.  In so deciding, the court stated, "[Epoch did] not even allege it offers live broadcast content on its site." *Id*. Yet at the motion to dismiss stage the court is to evaluate the allegations in the plaintiff's complaint. *Id*. at *3-4 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  There, as here, Plaintiff did not allege the video content it viewed was prerecorded.  That failure merits dismissal, and whether or not Epoch alleged anything is inapposite. If the Court desires briefing on Epoch's live offerings, Epoch will provide it.

14

4890-6359-4559.1

15

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and correct copy of the foregoing document was served in accordance with the Federal Rules of Civil Procedure on November 30, 2022, *via CM/ECF*, on counsel of record.

*/s/ Brad J. Barmen*
Brad J. Barmen